FILED

Jun 26 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

~~SEALED BY ORDER OF THE COURT~~

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>MICHELLE GRIEB<br><br>*Defendant(s)* | Case No. **CR 20-70854-MAG** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 30, 2020__ in the county of __Santa Clara__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession of Methamphetamine with the Intent to Distribute<br><br>Penalties: Maximum 20 years imprisonment; minimum 3-years supervised release; maximum lifetime supervised release, maximum $1 million fine, $100 special assessment |

This criminal complaint is based on these facts:

See attached affidavit -- incorporated by reference

approved as to form: */s/ Jeffrey A. Backhus*
Jeffrey A. Backhus, Assistant U.S. Attorney

☑ Continued on the attached sheet.

/s/ Carla Ceccon   by VKD w/permission
*Complainant's signature*

Carla Ceccon, FBI Special Agent
*Printed name and title*

Sworn to before me (___) in person or ( X ) over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: June 26, 2020

*Virginia K. DeMarchi*
*Judge's signature*

City and state:   San Jose, CA

Hon. Virginia K. DeMarchi, U.S. Magistrate Judge
*Printed name and title*

[Print]   [Save As...]   [Attach]   [Reset]

## AFFIDAVIT OF FBI SPECIAL AGENT CARLA CECCON IN SUPPORT OF THE APPLICATION FOR AN ARREST WARRANT

I, Carla Ceccon, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), where I have been employed since May, 2018. I am currently assigned to the San Jose Violent Crime Unit of the FBI's San Francisco Field Division. Prior to becoming an FBI Special Agent, I worked as a Police Officer for Sacramento Police Department in Sacramento, CA.

2. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking. I completed five months of FBI Special Agent Basic Training program at the FBI academy in Quantico, Virginia. During the course of my employment with the FBI, I have investigated and assisted in the investigations of criminal violations relating to firearms and/or narcotics. During these investigations, I have participated in and utilized the following investigative tools: conducting physical surveillance, analyzing phone records obtained from pen registers, trap and trace devices, and physical devices, collecting and processing evidence, interviewing suspects and victims, writing affidavits for search warrants and executing search and arrest warrants.

3. This Affidavit is made in support of an application for a warrant to arrest Michelle Grieb ("GRIEB") for a violation of 21 U.S.C. § 841(a)(1), (B)(1)(C) (Possession of Methamphetamine with the Intent to Distribute). As set forth in detail below, there is probable cause to believe that on or about April 30, 2020, GRIEB possessed methamphetamine with intent to distribute.

4. The information contained in this Affidavit is based upon my training and experience, my personal knowledge of this investigation and information provided to me by other agents and law enforcement officials who have assisted in this investigation and have experience investigating the violations of firearm laws. This Affidavit is intended to provide probable cause to support the issuance of the complaint and arrest warrant and does not set forth

all of the information of which I am aware. The Affidavit is limited to the facts relevant and necessary to establish probable cause for the requested arrest warrant.

## APPLICABLE LAW

5. Title 21, United States Code § 841(a)(1) provides as follows:

> (a) It shall be unlawful for any person knowingly or intentionally—
>
> (1) to . . . possess with intent to . . . distribute . . . a controlled substance.

## PROBABLE CAUSE

6. On April 30, 2020, at approximately 1230 hours, SJPD Street Crimes Unit Officers and Burglary Prevention Unit Officers were on surveillance in the area of 2310 Samaritan Place, Apartment #3 in San Jose, CA. Officers had previously received a "Crimestoppers Tip" that Michelle Grieb ("GRIEB") lived at the residence and had outstanding warrants. The tip also stated Cade Sublet ("SUBLET") was on Post Release Community Supervision (PRCS), and that GRIEB and SUBLET lived at the residence together and were dealing narcotics from the residence.

7. Officers observed SUBLET's vehicle pull into the driveway of 2310 Samaritan Place. SUBLET and a female exited the vehicle and walked into the residence of 2310 Samaritan Place, Apartment #3.

8. Officers contacted the Probation Department and had prior knowledge SUBLET was on probation (specifically, PRCS) in Santa Clara County.

9. A few days prior, officers observed SUBLET come and go from 2310 Samaritan Place, Apartment #3. SUBLET's listed probation address was also 2310 Samaritan Place, Apartment #3. Officers had prior knowledge that SUBLET lived with his girlfriend, GRIEB, at the residence. A records check of GRIEB revealed she had an outstanding felony warrant and two (2) outstanding misdemeanor warrants for her arrest.

10. Officers approached 2310 Samaritan Place, Apartment #3 approximately one (1) minute after they observed SUBLET and the female enter the residence.

11. Officers knocked on the front door and announced themselves. Officers heard movement inside the residence and observed a large dog barking and scratching at the door. Officers knocked on the door numerous times, but nobody answered the door. After approximately three (3) minutes, the dog stopped barking and movement was no longer heard inside the house.

12. Officers threw two (2) rocks at the front glass windows. After the second rock, the glass broke, and officers heard the occupants yell "okay, okay, we're coming out".

13. Approximately five (5) minutes from the time officers knocked and announced at the front door, SUBLET opened the door to the residence and walked out of the residence. A few seconds later, GRIEB and a teenager (later identified as GRIEB's daughter) walked out of the residence. SUBLET and GRIEB were placed in handcuffs.

14. Officers conducted a search of SUBLET's person and located a large bag of a crystal-like substance inside his right front pants pocket. The officer believed the crystal-like substance to be methamphetamine (approximately 25 g).

15. Officers entered the residence and performed a probation search.

16. Officers located two (2) additional bags of a crystal-like substance, one bag of a brown tar like substance, and a plastic tube containing numerous pill-type objects submerged inside the toilet bowl of the upstairs bathroom. Officers believed the crystal-like substance to be methamphetamine, the brown tar-like substance to be heroin and the pills to be ecstasy. Officers also located a Ruger .22 caliber revolver, a small case containing a Derringer .357 magnum pistol, and one round of live .357 magnum ammunition (not loaded in the gun), submerged in the toilet tank. A records check revealed the Ruger revolver was stolen out of Santa Clara.

17. Officers located a small pink container with a brown tar-like substance and a broken pen with a tar-like residue inside a black bag in GRIEB and SUBLET's bedroom. A clear glass smoking pipe was also located inside the bag. Officers also located two (2) socks filled with five (5) rounds of .357 caliber ammunition and five (5) rounds of .38 caliber ammunition

inside a dresser drawer in the bedroom. SUBLET and GRIEB's cell phones were also located in the bedroom.

18.  GRIEB and SUBLET were both read their Miranda rights and agreed to speak to officers. GRIEB stated she knew she had warrants and she knew SUBLET was on probation. GRIEB stated there was heroin and a bong inside a bag in her room.

19.  SUBLET stated the crystal-like substance inside his pocket was methamphetamine. He advised it was approximately 10 grams. SUBLET stated there were some smoking pipes, plaque and a knife inside the residence. SUBLET stated the items inside the residence were both his and GRIEB's.

### Controlled Substances Seized

20.  During the search of the residence, SJPD Officers seized heroin and methamphetamine.

### Methamphetamine Seized

21.  Officers located a total of 65.5 grams (gross weight) of a crystal-like substance on SUBLET's person and inside GRIEB and SUBLET's residence. Based on the officer's training and experience, the officer believed all of the crystal-like substances seized on this day to be methamphetamine. Based on my training and experience, I know that methamphetamine is a Schedule II controlled substance.

22.  Based on my training, experience, and conversations with other law enforcement agents, I know the average dosage of methamphetamine varies depending on the user. On average, a methamphetamine user consumes approximately .1 grams and up to .25 grams of methamphetamine per dose. Based on my training, experience, and conversations with other law enforcement agents, I know the average methamphetamine dose lasts approximately six to eight hours. Therefore, on average, users take two to four doses of methamphetamine a day.

23.  Based on my training, experience, and conversations with other law enforcement agents, I know it is uncommon for methamphetamine users to carry on their person more than their next couple doses of methamphetamine. This is out of fear of being caught by law

enforcement with a large amount of drugs, as well as out of fear that a fellow drug user will take it from them.

24. By contrast, based on my training, experience, and conversations with other law enforcement agents, I know drug distributors often keep a drug supply on hand for immediate sales. This supply is often kept on their person, immediate property, house, or vehicle.

25. Based on the gross weight amount of methamphetamine located on SUBLET and in GRIEB and SUBLET's residence and based on the average dosage, SUBLET and GRIEB had between 262-655 doses of methamphetamine in their possession. This equates to approximately 65.5 – 327.5 day's supply. Based on my training and experience, the approximately 65.5 grams of methamphetamine located on SUBLET's person and inside GRIEB and SUBLET's residence is an amount consistent with that of methamphetamine distribution.

### Heroin Seized

26. Officers located a total of 33.0 grams (gross weight) of a brown tar-like substance. The officer believed the brown tar like substance to be heroin.

27. Based on the gross weight amount of heroin located in GRIEB and SUBLET's residence and the average dosage amount, I believe SUBLET and GRIEB possessed heroin for sales because they had an amount substantially greater than what is usually purchased by heroin users.

28. Based on my training and experience, I know an average heroin user uses approximately .02 grams to .05 grams of heroin per dose. The amount of heroin seized is

///
///
///
///
///
///
///

between 660-1,650 doses. Based on my training and experience, the amount of heroin seized was consistent with sales.

## Conclusion

29.     Based upon the foregoing evidence, there is probable cause to believe that on or about April 30, 2020, GRIEB violated 21 U.S.C. § 841(a)(1), (B)(1)(C) (Possession of Methamphetamine with the Intent to Distribute).  As such, I respectfully request that the court issue a criminal complaint and arrest warrant for GRIEB.

/s/ Carla Ceccon
Carla Ceccon
Special Agent
Federal Bureau of Investigation

Sworn to before me (___) in person or ( X ) over the telephone pursuant to Fed. R. Crim. P. 4.1 and 4(d).  on June 26, 2020

*Virginia K. DeMarchi*
HONORABLE VIRGINIA DEMARCHI
UNITED STATES MAGISTRATE JUDGE

~~SEALED BY ORDER OF THE COURT~~

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

─── OFFENSE CHARGED ───

21 U.S.C. § 841 (a)(1), (b)(1)(C)- Possession of Methamphetamine with the Intent to Distribute

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: Maximum 20 years imprisonment; minimum 3-years supervised release; maximum lifetime supervised release, maximum $1 million fine, $100 special assessment

─── Name of District Court, and/or Judge/Magistrate Location ───
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

─ DEFENDANT - U.S ─
▶ MICHELLE GRIEB

DISTRICT COURT NUMBER
**CR 20-70854-MAG**

FILED
Jun 26 2020
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

─── PROCEEDING ───

Name of Complaintant Agency, or Person (& Title, if any)
Federal Bureau of Innvestigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   David L. Anderson
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Jeffrey A. Backhus

─── DEFENDANT ───

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No   If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: No Bail

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments: